2026 IL App (1st) 242568-U

No. 1-24-2568

Order filed June 30, 2026

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 CR 03811 |
| | ) | |
| ALEJANDRO ARELLANO, | ) | Honorable |
| | ) | Timothy Joseph Joyce, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE D.B. WALKER delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held:*  Defendant's sentence for first degree murder is affirmed where the trial court appropriately considered the factors in aggravation and mitigation.

¶ 2    Following a jury trial, defendant Alejandro Arellano was found guilty of two counts of first degree murder. The court merged those counts and sentenced defendant to 41 years in prison. On appeal, defendant challenges his sentence, arguing that the trial court failed to "appropriately" consider the factors in mitigation demonstrating defendant's potential for rehabilitation. For the following reasons, we affirm.

¶ 3    Defendant was indicted for the first degree murder of Samantha Micaela Maldonado Mantuano. The State proceeded on counts of first degree murder with intent to kill (720 ILCS 5/9-1(a)(1) (West 2022)) (count I), and first degree murder with knowledge of the strong probability of death or great bodily harm (720 ILCS 5/9-1(a)(2) (West 2022)) (count II).

¶ 4    We set forth only the trial evidence relevant to the issue on appeal.

¶ 5    Lucia Mantuano, Samantha's mother, testified that she had worked with defendant and Samantha at a restaurant. (As Lucia and Samantha share the same last name, we refer to them by their first names.) Samantha was dating defendant. On March 10, 2023, Samantha began a new job in downtown Chicago. On March 11, 2023, Chicago Police Department (CPD) detectives told Lucia that Samantha had been killed earlier in the day.

¶ 6    Robert Hardy, a bartender at Miller's Pub in Chicago, testified that he worked there early on March 11, 2023. Hardy witnessed defendant, whom Hardy identified in court, and a woman sit at the bar and talk quietly over alcoholic drinks. The woman paid and left, and defendant quickly followed.

¶ 7    The State published footage from security cameras at the Adams Street and Wabash Avenue Chicago Transit Authority (CTA) station from March 11, 2023. The video is included in the record on appeal and has been viewed by this court. In relevant part, the video depicts Samantha ascending the stairs to the CTA train platform, followed by defendant. Samantha runs past the turnstile, and defendant follows closely. While Samantha moves to the far side of the platform, defendant approaches her while opening a folding pocket knife, which he later puts in his pocket. Samantha crouches behind a wall, until a train approaches the platform, at which point she tries to board the train. Defendant pulls her off the train, and Samantha pushes defendant and walks away

from him. Defendant then draws a knife and stabs Samantha in the back several times. Samantha runs to the street, and defendant flees the station but does not follow Samantha.

¶ 8     Jalen Jones, a security guard at Miller's Pub, testified that at approximately 1:25 a.m. on March 11, 2023, he exited the bar and found a woman who had been stabbed. Someone asked what happened and the woman said, "Alejandro did it."

¶ 9     A CPD officer and an EMT testified that they found Samantha wounded on the street. Samantha was asked "who did this." She replied that it was defendant. Samantha was transported to Stroger Hospital, where she was pronounced dead at 3:39 a.m.

¶ 10     CPD officer Patrick Martino testified that he arrested defendant on March 11, 2023. Martino conducted a custodial search of defendant, and found a metal switchblade knife with blood and skin on the blade.

¶ 11     The parties stipulated that Dr. Meredith Reynolds, an assistant medical examiner, would testify that she conducted Samantha's autopsy. Reynolds would opine that Samantha died from multiple stab wounds to her chest, left arm, abdomen, and lower back. The manner of death was homicide.

¶ 12     CPD detective Adrian Zepeda testified that he conducted a recorded interview of defendant on March 11, 2023. Portions of that interview were published. That video is included in the record on appeal and has been viewed by this court.

¶ 13     In that interview, defendant claims he spent the night at Miller's Pub by himself, but then acknowledges meeting Samantha there. He claims he had approximately two beers before accompanying Samantha to her train, hugging her goodbye, and leaving. After being shown

footage of himself on the CTA platform with Samantha, defendant admits that he became angry and stabbed Samantha with the knife found on him during his arrest.

¶ 14    Defendant testified that he lost his job one week before the occurrence, and felt "desperate, stressed, *** [and] betrayed." Defendant looked for a new job, but became depressed as the week continued. He started drinking heavily. On March 10, 2023, defendant looked for work downtown during the afternoon, but then began drinking. After an afternoon and evening of drinking, defendant met Samantha at Miller's Pub. However, he "lost consciousness" because of his intoxication and could not remember what happened after that.

¶ 15    Following arguments, the jury found defendant guilty of both counts of first degree murder. The court denied defendant's motion for a new trial.

¶ 16    The court ordered a presentence investigation (PSI) report, which disclosed no arrests or convictions. Defendant was raised in Mexico and Chicago, and had a good relationship with his parents. He began working at age 12, and had worked at several restaurants in the Chicago area prior to his arrest. He felt safe in his living situation, and had supportive friends. Defendant reported no mental health concerns, but admitted abusing alcohol since age 12. Defendant was 31 years old on the day of the offense.

¶ 17    At sentencing, Samantha's father, sister, and mother read statements describing the significant impact Samantha's death had on their lives and the ways in which her loss presented daily challenges. The State also introduced six letters from other family members who described Samantha's impact on their lives, and the loss they felt after her death.

¶ 18    In mitigation, the defense presented 21 letters from defendant's friends and family in support of his character and rehabilitative potential. Those letters addressed defendant's history of

hard work and dedication to his family, and the impact his incarceration had on the family members and friends. Defense counsel highlighted that defendant began working at a young age, and "economically, he has been supporting his entire family." Defendant also presented certificates demonstrating the completion of bible study courses.

¶ 19    The State argued that Samantha had a "huge impact" on her family and friends, and that a harsh sentence was necessary to deter similar crimes of domestic violence on the CTA. The State also argued that video showed defendant drawing a knife while following Samantha, demonstrating that defendant's conduct was intentional. Finally, the State argued that this killing was a "a brutal murder of a young woman who had to basically die in the middle of a city street in the early morning hours of Chicago."

¶ 20    In mitigation, defense counsel argued that defendant had "no prior incident, arrest or convictions." Counsel noted that defendant engaged in bible study and sought guidance in his faith. Defendant declined to speak in allocution.

¶ 21    In announcing its sentence, the trial court described the offense as "an unspeakable crime." The court stated that Samantha "was viciously attacked in a public place that's important to this community." The court highlighted defendant's conduct in drawing a knife on the CTA station stairs, suggesting his intent to kill. The court noted defendant's lack of criminal history, stating "[t]hat's not really to his credit because that's what we're all supposed to do but it is a circumstance that the [c]ourt considers." The court noted Samantha's hard work and impact on the people in her life, as well as the effect defendant's incarceration would have on the people in his life. The court added that it was "familiar with the range of sentencing." The court merged count II into count I, and sentenced defendant to 41 years in prison on count I.

¶ 22    Defendant filed a motion to reconsider his sentence, which asserted that his sentence was excessive and that the court failed to consider statutory mitigation factors. The court denied that motion.

¶ 23    On appeal, defendant argues that his sentence is excessive because the trial court did not adequately consider and weigh his rehabilitative potential shown by the letters of his family and friends, his years of employment, and his lack of a criminal history.

¶ 24    A sentence is "determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The trial court must consider "all of the factors of aggravation and mitigation, including, *inter alia*, the defendant's age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment and education, as well as the nature and circumstances of the crime and of the defendant's conduct in the commission of it." *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). However, the seriousness of an offense is the single most important factor in crafting a sentence. *People v. Hussain*, 2024 IL App (1st) 230471, ¶ 44.

¶ 25    This court affords great deference to the trial court's sentencing decisions and reviews such decisions under an abuse of discretion standard, because the trial court is in a better position than this court to consider the statutory sentencing factors. *People v. Clark*, 2024 IL 127838, ¶ 76. A sentence within the statutory range is presumed proper and "will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." *People v. Gordon*, 2016 IL App (1st) 134004, ¶ 56.

¶ 26    The sentencing range for first degree murder is 20 to 60 years in prison. 730 ILCS 5/5-4.5-20(a)(1) (West 2022). Here, defendant was sentenced to 41 years in prison, well within the

statutory range. *Id*. We therefore presume defendant's sentence is proper unless he affirmatively shows otherwise. *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 12.

¶ 27     Defendant asserts that the trial court did not adequately consider the evidence in mitigation, leading to a harsher sentence than necessary to accomplish "restoration to useful citizenship." Defendant argues that the court's statement that defendant's lack of a criminal history is "not really to his credit" demonstrated a failure to consider the statutory factor of defendant's "history of prior delinquency or criminal activity" in mitigation. Further, defendant claims that the trial court's comments suggested it considered the letters from defendant's family and friends to be aggravating, rather than mitigating. Finally, defendant argues that a 41-year sentence "is likely a life sentence" given his age and life expectancy in prison.

¶ 28     Here, the trial court's comments at sentencing show that it considered the factors defendant claims were ignored. Specifically, the court noted that defendant's lack of a criminal history was "a circumstance that the [c]ourt considers." The court stated that it did not consider that factor particularly helpful in this case, because "that's what we're all supposed to do[.]" Further, the court specifically recalled the letters from friends and family of defendant when it noted the support they provided, and therefore expressly stated its consideration of those statements. The court concluded by acknowledging the range of sentencing for first degree murder, and imposing an appropriate sentence.

¶ 29     Reviewing the trial court's statements in context, we find that the court sentenced defendant based on the particular circumstances of his offense. *People v. Curtis*, 354 Ill. App. 3d 312, 326 (2004) (a reviewing court must not focus on isolated words or statements of the trial court to determine whether reversible error occurred). Rather than ignoring the factors in mitigation, the

trial court clearly evaluated and weighed the evidence before it and crafted a sentence adequate to the seriousness of the crime. See *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977) (the defendant's sentence "must be based upon the particular circumstances of each individual case"). Throughout its sentencing decision, the court referenced defendant's conduct and the seriousness of the offense, which is a fundamental consideration of any lawful sentencing. *Hussain*, 2024 IL App (1st) 230471, ¶ 44. We find that the court fulfilled its obligation to impose an individualized sentence and articulated its consideration of defendant and his conduct in this case, and its sentence did not amount to an abuse of discretion. *Clark*, 2024 IL 127838, ¶ 76.

¶ 30    As noted, the trial court is in the best position to weigh the evidence and statutory factors in crafting a sentence, and we will not disturb that decision absent an abuse of discretion. *Id*. Defendant's appeal essentially requests that we reweigh the evidence and sentencing factors, which we will not do. *Hussain*, 2024 IL App (1st) 230471, ¶ 42. A trial court "need not 'give greater weight to mitigating factors than to the seriousness of the offense nor does the presence of mitigating factors either require a minimum sentence or preclude a maximum sentence.' " *Id.* at ¶ 44 (quoting *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123). The trial court here crafted a sentence well within the sentencing range that reflects the seriousness of the offense, as weighed against the factors in mitigation. Defendant has thus not demonstrated an abuse of discretion. *People v. Colone*, 2024 IL App (1st) 230520, ¶ 135.

¶ 31    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 32    Affirmed.